**Opinion filed September 17, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00098-CR

_____

**JOHN MAC BURROW, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. 20,538**

## MEMORANDUM OPINION

John Mac Burrow appeals his conviction by a jury of the offense of "driving while intoxicated, third offense or more – habitual felony offender." The trial court assessed his punishment at twenty-five years in the Texas Department of Criminal Justice, Institutional Division. In a single issue on appeal, Burrow contends that the evidence is legally and factually insufficient to support his conviction. We affirm.

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex.

Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

Michael Orsini testified that he is a Texas State Trooper. He indicated that he had received special training in detecting signs that a person is intoxicated. He stated that, as he was following Burrow, Burrow crossed the "double center stripe no passing zone" line several times. He said that indicated to him that the driver could be intoxicated. Trooper Orsini related that, after stopping Burrow, while he was standing by Burrow's window, he could smell a strong odor of alcohol coming from his side of the vehicle. He said that, after getting Burrow out of his vehicle, he could smell a strong odor of alcohol when he was talking to Burrow. Trooper Orsini also noted that, as Burrow got out of his vehicle, he used the vehicle to steady himself and to put his arm against. He mentioned that Burrow's eyes were glassy, red, and bloodshot and that his speech was slurred. He acknowledged that Burrow told him that he had Bell's palsy. Trooper Orsini insisted that, based upon his training and experience, Bell's palsy is not a medical condition that would affect Burrow's performance or ability to do a field sobriety test.

Trooper Orsini testified that, when he first asked Burrow if he had had anything to drink, Burrow told him he had had a couple of beers. He indicated that Burrow told him he was not on medication or taking anything and was not seeing a physician.

Trooper Orsini testified that he had been taught three different standardized field sobriety tests: the horizontal gaze nystagmus, which deals with the eyes; the walk-and-turn; and the one-leg stand. He indicated that he asked Burrow, who did not appear to be injured or physically handicapped in any way, to perform field sobriety tests the evening he was arrested. He acknowledged that Burrow had told him he had a knee injury. He noted that Burrow did not appear to have any problems walking into the courtroom.

After relating that he had administered a horizontal gaze nystagmus test to Burrow, Trooper Orsini indicated that there are six possible clues in the test and that he believed Burrow's result was six. He said that, based upon his training and experience, this result showed that Burrow was intoxicated. He stated that the horizontal gaze nystagmus test is 88% accurate at .08.

2

Trooper Orsini described the walk-and-turn test as one where the subject is instructed to place one foot in front of the other and hold his arms down to the side. He indicated that Burrow did not follow directions and that he had difficulty standing in the starting position. He stated that there are eight clues in this test and that Burrow had six, which, in his opinion, showed an impairment of Burrow's normal mental or physical faculties. He insisted that, in his training, he was taught that a person who is intoxicated would have four or more clues. He said that, based upon his training and experience, the results of this test were consistent with the results of the horizontal gaze nystagmus test. He testified that both tests together indicated to him that Burrow was intoxicated.

Trooper Orsini indicated that he instructed Burrow on the one-leg stand test. Because Burrow had said he had an injury to his right knee, Trooper Orsini testified that he gave him the option of using whatever leg he would feel comfortable with. He said that the goal of the test is to hold up one's foot for approximately thirty seconds. He noted that Burrow was not able to do that. He related that three clues on this test would indicate intoxication and that Burrow had two.

Trooper Orsini testified that, in the middle of the testing, Burrow interjected that he and his girlfriend had been having sex and drinking beer. He recalled that Burrow had originally indicated that he had consumed a couple of beers but that, when Burrow was telling him about his girlfriend, he said that he had drunk six beers. He said that he then administered to Burrow a preliminary breath test, which he failed. He indicated that, based on his observation and talking with Burrow, he formed the opinion that Burrow was intoxicated and could not have safely operated a vehicle that night in his condition.

He stated that inside an ice chest in the back of Burrow's vehicle there were nine full, cold cans of Budweiser beer. He related that, when he questioned Burrow as to why there were no open containers, Burrow stated that he had thrown them out the window of the vehicle. Trooper Orsini expressed his opinion that Burrow was leaning forward almost in an awkward position so that he would not be on camera. He also said that Burrow told him he had his last drink ten seconds before he was pulled over.

While a video taken by Trooper Orsini was being shown to the jury, he acknowledged that he had not seen Burrow cross over the double yellow line before activating his camera. The video did not show Burrow crossing the double center stripe but, on more than one occasion, showed him drifting to the left where his left tire was on the line. This did not occur only when Burrow was

going around a curve. The highway upon which Burrow was driving, as shown in the video, was a somewhat narrow, two-lane highway with no shoulders.

On cross-examination, Trooper Orsini acknowledged that he did not do the horizontal gaze nystagmus test in the way he was trained "for the amount of seconds for each eye, for each repetition and for each smooth pursuit and for each deviation." He said he was being honest with the jury that he did not do it in a standardized way that night. He acknowledged that the test, in order to be a valid indicator of intoxication, has to be standardized.

On redirect examination, Trooper Orsini quoted from an NHTSA (National Highway Traffic Safety Administration) manual that indicated the field sobriety tests, even when administered under less than ideal conditions, will generally serve as valid and useful indicators of impairment. He said that, in administering the horizontal gaze nystagmus test, he did not make any error that would have caused it to be invalid. Evidence of Burrow's prior convictions was established by stipulation.

Based upon our application of the standards previously set forth, we hold that the evidence is legally and factually sufficient to support the conviction. In urging that the evidence is insufficient, Burrow stresses that he did not go all the way over the double center stripe on the highway and that Trooper Orisini did not correctly perform the horizontal gaze nystagmus test. We believe that, when the evidence is viewed as a whole, including the evidence to which Burrow refers, a rational jury could find beyond a reasonable doubt that Burrow was intoxicated. We also hold that the verdict is not so weak that it is clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the conflicting evidence. Burrow appears to principally rely on the cases of *Stagg v. Texas Department of Public Safety*, 81 S.W.3d 441 (Tex. App.—Austin 2002, no pet.), and *Moore v. State*, 640 S.W.2d 300 (Tex. Crim. App. 1982). However, neither case is an appeal from a conviction for driving while intoxicated, and there is nothing in either case that is inconsistent with our opinion. We overrule Burrow's sole issue on appeal.

The judgment is affirmed.

September 17, 2009                                                    PER CURIAM

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.